UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

04-21401-CIV-MARTINEZ/BANDSTRA

FLUNNI CARMEN McGUIRE,

    Plaintiff,

vs.

MIAMI-DADE COUNTY,

    Defendant.

_____/

NIGHT BOX FILED
DEC 0 1 2005
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### DEFENDANT MIAMI-DADE COUNTY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, MIAMI-DADE COUNTY ("the County"), pursuant to Fed. R. Civ. P. 56 and Local Rule 7.5, files this Memorandum in Support of its Motion for Summary Judgment.

The Plaintiff has not established a *prima facie* case with respect to Count I, a Title VII retaliation claim, because she has not shown that she suffered an adverse employment action, nor has she shown a casual relationship between her engagement in protected activity and any alleged adverse action. Additionally, the Plaintiff has not established a *prima facie* case with respect to Count II, a discrimination claim brought under the Americans with Disabilities Act ("ADA"), because she has not shown that she is disabled within the meaning of the ADA, nor has she shown that she suffered an adverse employment action. Accordingly, the County is entitled to summary judgment on all counts of the Complaint.[1]

---

[1] The parties have filed a Stipulation for Dismissal with Prejudice of Count III, McGuire's claim under the Age Discrimination in Employment Act. (D.E. #23).

# FACTS

## The parties

The County is a political subdivision of the State of Florida. *Complaint* ¶ 6. McGuire is employed by the County as a Computer Technician 2 in the County's Water and Sewer Department ("WASD"). *Complaint* ¶ 7. McGuire's job responsibilities include the installation, troubleshooting, and maintenance of computer hardware and data communication equipment. *Att.* 2.

McGuire has a condition known as Meniere's disease, which affects her balance and mobility and causes her to be sensitive to noises. *McGuire depo.* at 107, 186. On one occasion in 1998, McGuire had to be taken home from work due to these symptoms. *Id.* at 108.

## McGuire's allegation that supervisor Barnes ridiculed her

From 1996 until 2001, McGuire's supervisor was Dorothy Barnes ("Barnes"). *Id.* at 21, 84-85. McGuire claims that in November 2000, Barnes ridiculed her about her alleged disability and need to wear bandages following a surgical procedure on her nose. *Complaint* ¶ 16; *McGuire depo.* at 55-56. According to an email McGuire sent to Barnes in January 2001, Barnes asked, "Did you have to have the surgery? Was it necessary to have it?" *Att.* 15. McGuire also accused Barnes of questioning her concerning how she was feeling and breathing. *Id.*

During the five years that Barnes was McGuire's supervisor, McGuire received eight performance evaluations, all of which were satisfactory. *Att.* 4, 6, 7, 8, 18, 20, 22, 25. McGuire also received three merit raises while under Barnes's supervision. *Att.* 5, 9, 27. She did not receive any disciplinary action. *McGuire depo.* at 55.

2

**McGuire's allegation that supervisor Viera questioned her about her Meniere's disease**

In September 2001, McGuire transferred to a different section within the Water and Sewer Department where she was initially supervised by Deborah Viera ("Viera"), Chief of the department's Management Information Systems Division. *Id.* at 85, 93.

McGuire claims that Viera questioned her concerning her Meniere's disease and inquired about the medications she was taking. *Complaint* ¶ 15; *McGuire depo.* at 125-27. Viera testified that she once asked McGuire about her medication because she herself was taking the same medication and was curious to know how McGuire responded to it. *Viera depo.* at 55-56. McGuire admits that Viera did not say anything to her suggesting that McGuire was not able to perform her job due to her Meniere's disease. *McGuire depo.* at 128-29.

**McGuire's allegation that she was required to perform job duties that were excessive and beyond the scope of her position as a Computer Technician 2**

In March 2002, Viera assigned McGuire to another supervisor, Bolivar Rivera ("Rivera"). *Viera depo.* at 70. Under Rivera's supervision, McGuire was given assignments very similar to those she had performed under Barnes's supervision. *McGuire depo.* at 96. Rivera assigned McGuire tasks such as troubleshooting computer problems, connection problems, and work station problems. *Rivera depo.* at 23; *McGuire depo.* at 96. Rivera and Viera both testified that these assignments were consistent with McGuire's job classification as a Computer Technician 2. *Rivera depo.* at 22; *Viera depo.* at 75.

Rivera often had difficulty finding enough work for McGuire to do because most of the work for Computer Technicians was at the "Help Desk," the section supervised by Barnes. *Rivera depo.* at 43; *Viera depo.* at 76. In September 2004, McGuire was reassigned to Barnes's section because there was no more work for her in Rivera's section. *Rivera depo.* at 43-44.

### McGuire's allegation that she was denied training

McGuire claims that she was denied training when Viera did not approve her request to attend an "E-government" class in March 2003. *McGuire depo.* at 167. According to Viera, this training class pertained to a different section than the one in which McGuire worked. *Viera depo.* at 82. McGuire was permitted to attend another training class ("GIS"). *McGuire depo.* at 168; *Viera depo.* at 81. In addition, she completed coursework at the Florida International University for which her supervisor, Rivera, approved tuition reimbursement. *Id.* at 169-170.

### McGuire's allegation that she received an unwarranted Record of Counseling

On May 28, 2003, McGuire was issued a Record of Counseling for refusing to perform an assignment and for going outside the chain of command to complain about an assignment. *Att.* 31. McGuire claims that she did not refuse to do the assignment, but only indicated that she "disagreed." *McGuire depo.* at 120. McGuire admits that she went outside the chain of command to complain about the assignment. *Id.* at 121-22. She was not suspended or demoted in connection with this Record of Counseling, nor was her pay decreased. *Id.* at 123.

### McGuire's allegation that the County delayed processing her request for reclassification or failed to respond to it

On October 27, 2003, McGuire submitted a Request for Classification Action seeking to have her job reclassified from a Computer Technician 2 to a higher position. *McGuire depo.* at 152-53; *Att.* 37. According to McGuire, she submitted the request because she believed that she was performing tasks above her job classification as a Computer Technician 2. *Id.* at 153. However, McGuire admits that she never filed a grievance alleging that she was being worked out of her classification. *Id.* at 154.

In accordance with the County's procedures for processing employee-initiated requests for reclassification, McGuire's application was forwarded to the Employee Relations Department

4

("ERD"). *Heffner aff.* at ¶ 4. ERD makes the final decision whether to approve or deny a request for reclassification; an employee's supervisors have no authority to approve or deny the request. *Id.* at ¶ 3.

A representative from ERD came to McGuire's job site to interview McGuire and observe the tasks she was performing. *Id.* at ¶ 5. ERD determined that the majority of McGuire's time was actually devoted to performing tasks of a lower job classification. *Id.* Based on their preliminary findings, ERD personnel concluded that McGuire's request for reclassification would likely result in her reclassification to a lower position rather than a higher position. *Id.*

Scott Heffner ("Heffner"), a Senior Compensation Specialist with ERD, communicated ERD's findings to Rivera. *Id.* at ¶ 6. Rivera and his immediate supervisor, Wilson Ross ("Ross"), then met with McGuire on June 3, 2004, and explained to McGuire that there was a chance ERD would downgrade her position if she pursued her request for reclassification. *McGuire depo.* at 156. Rivera sent McGuire an email providing her with Heffner's name and telephone number and advised her to contact Heffner directly. *Att.* 38. However, McGuire never attempted to speak with Heffner. *McGuire depo.* at 159, 163.

McGuire sent a reply to Rivera's email accusing Rivera and Ross of retaliating against her for having filed an EEOC charge. *Att.* 39. McGuire also stated that she was withdrawing her reclassification request. *Id.*

Ross responded to McGuire's email on June 7, 2004, reiterating that the information he and Rivera had provided to McGuire came from ERD. *Att.* 40. Ross reminded McGuire that "the decision is and always has been yours of how you want to proceed with the employee initiated reclassification request." *Id.*

5

McGuire ultimately withdrew her request for reclassification. *McGuire depo.* at 161. She never contacted Heffner or anyone else at ERD. *Id.* at 163; *Heffner aff.* at ¶ 6.

**McGuire's allegation that her performance evaluation was intentionally delayed**

McGuire received two performance evaluations while under Rivera's supervision, both of which were satisfactory. *Att.* 28, 34. Her evaluation covering the period from October 28, 2002, through October 26, 2003, was not presented to McGuire until March 25, 2004. *Att.* 34. McGuire claims that her supervisors intentionally delayed issuing this evaluation. *Complaint* ¶ 13. Rivera testified that McGuire was frequently absent from work during this period on medical leave. *Rivera depo.* at 16, 24-25. Regardless, McGuire admits that she received this evaluation on March 25, 2004, that the overall rating was satisfactory, and that she received a five percent merit increase in connection with the evaluation. *McGuire depo.* at 146-148.

**McGuire's EEOC charges**

On June 20, 2003, McGuire filed Charge no. 15C-2003-00154 with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex, national origin, and disability. *Id.* at 132; *Att.* 33. McGuire alleges that the filing of this charge constitutes protected activity for which she was retaliated against. *Complaint* ¶ 9. Eventually, the EEOC issued a dismissal and notice of suit rights. *McGuire depo.* at 139.

On January 31, 2004, McGuire filed EEOC Charge no. 150-2004-01974, alleging retaliation and discrimination based on age and disability.[2] *Att.* 41. WASD management was not notified of this charge: the EEOC sent a notice directly to the County Attorney's Office indicating that no response was required from the County. *Viera aff.* at ¶¶ 4-5; *Rivera aff.* at ¶¶

---

[2] The claims pled in the Complaint are premised on this second EEOC charge. *See, Complaint* ¶ 3.

4-5. Accordingly, McGuire's supervisors were unaware that McGuire had filed this charge. *Id.* On March 12, 2004, the EEOC issued a dismissal and notice of suit rights. *Att.* 42.

On June 3, 2004, McGuire filed EEOC Charge no. 150-2004-04391 with the EEOC, alleging retaliation. *Att.* 43. Like her previous charge, WASD was not notified and the EEOC sent a notice directly to the County Attorney's Office indicating that no response was required from the County. *Viera aff.* at ¶¶ 4, 6; *Rivera aff.* at ¶¶ 4, 6. Accordingly, McGuire's supervisors were unaware that McGuire had filed this charge. *Id.* On September 27, 2004, the EEOC issued a dismissal and notice of suit rights for this charge. *Att.* 44.

On June 10, 2004, McGuire filed her Complaint in this Court alleging retaliation in violation of Title VII and discrimination in violation of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). *Complaint* ¶¶ 18-23.

On November 28, 2005, the parties filed a Stipulation for Dismissal with Prejudice of McGuire's claim under the ADEA. (D.E. #23).

## DISCUSSION

### I. Summary judgment standard

As the party seeking summary judgment, the County bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is a minimal one, and it does not require the moving party to support its motion with affidavits or other materials negating the non-moving party's claim. *Id.* Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id.* Once the moving party meets its initial burden, the burden shifts to the non-moving party to go

beyond the pleadings and come forward with depositions or other evidentiary materials which show there is a genuine issue of material fact. 477 U.S. at 324. Specifically, it is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. *Id.* at 322-23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

II.  **The undisputed facts show that the County is entitled to summary judgment on Count I of the Complaint (retaliation in violation of Title VII of the Civil Rights Act of 1964) because McGuire has failed to establish a *prima facie* case.**

To establish a *prima facie* case of retaliation under Title VII, McGuire must show (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal link between her protected activity and the adverse action. *See, Weeks v. Harden Manufacturing Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Once McGuire has proved her *prima facie* case, the burden shifts to the County to provide a legitimate, nondiscriminatory reason for the adverse action. *See, E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). If the County does, the burden then shifts back to McGuire to prove, by a preponderance of the evidence, that the County's explanation is a pretext for retaliation. *See, Meeks v. Computer Associates International*, 15 F.3d 1013, 1019 (11th Cir. 1994). McGuire "must show that 'a discriminatory reason more likely than not'" motivated the decisionmaker. *Id.* (internal citations omitted).

 A. **McGuire has failed to establish a *prima facie* case of retaliation because she has not shown that she suffered an adverse employment action.**

Once a plaintiff establishes that she engaged in protected activity, the second element of plaintiff's *prima facie* case is that she suffered an adverse employment action.[3] An adverse

---

[3] For purposes of this Motion for Summary Judgment, the County does not dispute that McGuire's June 20, 2003 E.E.O.C. charge (*Att.* 33) constitutes statutorily protected activity.

8

employment action only occurs when there is a serious and material change in the terms, conditions, or privileges of employment. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). "Not everything that makes an employee unhappy is an actionable adverse employment action." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002); *accord, Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

In her Complaint, McGuire alleges that she suffered three adverse employment actions: (1) that her supervisors required her to perform job duties that were excessive and beyond the scope of her job classification, (*Complaint* ¶ 11); (2) that the County delayed the processing of her request for reclassification for a protracted period or failed to respond to it, (*Complaint* ¶ 12); and (3) that her supervisors delayed her performance evaluation for five months, knowing that this delay could only adversely impact McGuire receiving her reclassification, (*Complaint* ¶ 13). Additionally, though not pled in the Complaint, McGuire asserted during her deposition that she was denied training, (*McGuire depo.* at 167), and given an unwarranted Record of Counseling. *Id.* at 120.[4]  As discussed below, McGuire has not established a *prima facie* case because none of the miscellaneous incidents of which she complains constitutes an adverse employment action.

McGuire's first allegation – that her supervisors required her to perform job duties that were excessive and beyond the scope of her job classification – is unsupported by the record. Testimony from McGuire's supervisors as well as from the Employee Relations Department official involved in McGuire's request for reclassification establishes that McGuire was actually

---

[4] To the extent that McGuire is now attempting to raise claims not pled in the Complaint, the Complaint fails to comply with the "notice pleading" requirements of Fed. R. Civ. P. 8(a) and, accordingly, these new claims should be stricken.

9

performing job duties at or beneath – not above – her job classification as a Computer Technician 2. Yet even if there were evidence to support McGuire's assertion, she still could not establish a *prima facie* case because changes in work assignments without an accompanying reduction in salary, benefits, title, or status are not materially adverse employment actions. *See, Davis*, 245 F.3d at 1245. As the Eleventh Circuit has observed, "Title VII is not designed to make federal courts 'sit as a super-personnel department that reexamines an entity's business decisions.'" *Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)). The same reasoning applies to work assignment claims brought under the ADA such as those in this case:

> Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities. The same concern exists for public entities...which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public.

*Id.* at 1244.

Here, McGuire has not even alleged, much less proved, that the purported change in her job duties was accompanied by any reduction in salary, benefits, title, or status. On the contrary, the undisputed facts demonstrate that McGuire's salary has not decreased, her hours remain the same, and she has received an overall rating of "satisfactory" on every performance evaluation she has ever received. Under these circumstances, the acts alleged by McGuire amount to nothing more than "a mere inconvenience or alteration of job responsibilities" insufficient to constitute an adverse employment action. *Hartsfield v. Miami-Dade County*, 90 F.Supp.2d 1363 (S.D. Fla. 2000); *see also, Wells v. Colorado Dep't. of Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003) (adverse employment action "does not extend to a mere inconvenience or an alteration of job responsibilities"); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (changes in individual work assignments not adverse employment actions); *Mungin v. Katten*

*Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C.Cir.1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes").

Nor does McGuire's unsupported assertion that her workload was "excessive" suffice to establish a *prima facie* case of discrimination. "Increased workloads are an 'ordinary tribulation of the workplace' for which employees should expect to take responsibility." *MacLean v. City of St. Petersburg,* 194 F.Supp.2d 1290, 1299 (M.D. Fla. 2002) (citations omitted). For the same reasons that a change in work assignments does not constitute an adverse action, courts have declined to hold that an increased workload constitutes an adverse employment action. *See, e.g., Lawrence v. Wal-Mart Stores, Inc.,* 236 F.Supp.2d 1314, 1334 (M.D. Fla. 2002) (increased workload not actionable); *Simmons v. Mobile Infirmary Medical Center,* 391 F.Supp.2d 1124, 1136 (S.D. Ala. 2005) (employee's increased workload did not constitute an adverse employment action); *Mack v. Strauss,* 134 F.Supp.2d 103, 113-14 (D.D.C. 2001) (plaintiff's "allegedly increased workload does not constitute an actionable injury because it was not accompanied by some other adverse change in the terms, conditions or privileges of employment"). Because neither an alleged alteration in McGuire's job duties nor an increased workload constitutes an adverse employment action, McGuire has failed to establish a *prima facie* case.

The second adverse employment action alleged by McGuire is that the County delayed the processing of her request for reclassification for a protracted period or failed to respond to it. *Complaint* ¶ 12. This allegation is refuted by McGuire's admission that the County, in fact, *did* respond to her request for reclassification. *McGuire depo.* at 156-64. McGuire submitted her request on October 27, 2003, (*McGuire depo.* at 152-53); it was forwarded to the Employee Relations Department for processing, (*Heffner. aff.* at ¶ 4), and the Employee Relations

Department concluded that McGuire's request was likely to result in her position being downgraded. *Heffner aff.* at ¶ 5. McGuire's supervisors conveyed the ERD's findings to her on June 3, 2004, and, as a consequence, McGuire chose to withdraw her request for reclassification rather than risk being reclassified to a lower position. *McGuire depo.* at 156-64, *Att.* 38-40. Aside from her own conclusory assertions, McGuire has introduced no evidence that the County delayed processing her request for reclassification, nor has she identified any tangible harm which she suffered as a result of such alleged delay. Moreover, any issue as to whether McGuire suffered tangible harm as a result of the alleged delay is moot because McGuire voluntarily withdrew her request for reclassification. Because McGuire has not shown a serious and material change in the terms, conditions, or privileges of her employment in connection with the alleged delay in processing her request for a reclassification, she has not established a *prima facie* case.

The third adverse employment action alleged in the Complaint is that McGuire's supervisors delayed issuing her performance evaluation for five months. *Complaint* ¶ 13. This allegation refers to the performance evaluation covering the period from October 28, 2002 through October 26, 2003. *Att.* 34. At her deposition, McGuire acknowledged that she received this evaluation on March 25, 2004, that the overall rating was satisfactory, and that she even received a five percent merit increase in connection with the evaluation. *McGuire depo.* at 146-148. Not surprisingly, McGuire cannot point to any tangible harm which she suffered as a result of the alleged delay in receiving this performance evaluation. The alleged delay alone does not constitute an adverse employment action. *See, e.g., Burton v. Batista,* 339 F.Supp.2d 97, 112 (D.D.C. 2004) (delay in receipt of a performance evaluation is not adverse employment action); *Mack v. Strauss,* 134 F.Supp.2d 103, 113-14 (D.D.C. 2001) ("delayed evaluation is not an adverse action because plaintiff has failed to demonstrate that this delay had any tangible impact

12

on his employment"); *Kravitz v. New York City Transit Authority*, 2001 WL 1646513, *7 (E.D.N.Y. 2001) (delays in receipt of two performance evaluations did not constitute adverse employment action); *Lewis v. Glickman*, 1997 WL 276084, *6 (E.D.La. 1997) (late receipt of performance appraisal is "of no moment"). Because an alleged five-month delay in issuing McGuire's performance evaluation does not constitute an adverse employment action, McGuire has not established a *prima facie* case.

In addition to the three adverse employment actions alleged in the Complaint, McGuire testified during her deposition that she was denied training, (*McGuire depo.* at 167), and given an unwarranted Record of Counseling. *Id.* at 120. Like the other incidents of which she complains, neither of these circumstances constitutes an adverse employment action.

McGuire's claim that she was denied training is based on her supervisor's failure to approve her request to attend a single training class in March 2003.[5] *McGuire depo.* at 167. It is undisputed, however, that McGuire was permitted to attend another training class. *Id.* at 168; *Viera depo.* at 81. In any event, the denial of training does not constitute an adverse employment action. *See, Gonzalez v. Florida Dept. of Highway Safety and Motor Vehicles*, 237 F.Supp.2d 1338, 1367-68 (S.D. Fla. 2002) (denial of admission to a training program not a "serious and material" change in employment); *Miller v. City of Coral Gables*, 2000 WL 33231604, *7 (S.D. Fla. 2000) (failure or delay in training does not amount to adverse employment action); *Brook v. City of Montgomery*, 916 F.Supp. 1193, 1210 (M.D. Ala. 1996) (temporary failure to provide training not adverse employment action where such training not actually needed); *Bullock v.*

---

[5] This claim is time-barred because the allegedly adverse action occurred more than 300 days before McGuire filed EEOC Charge no. 150-2004-01974. 42 U.S.C. § 20003-5(e); *See Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir.2001); *Thomas v. Florida Power & Light Co.*, 764 F.2d 768, 770 (11th Cir.1985).

13

*Windal*, 953 F.Supp. 1461, 1473 (M.D. Ala. 1998) (denial of training not adverse employment action).

Similarly, McGuire's contention that she received an unwarranted Record of Counseling does not give rise to an adverse employment action. Putting aside for a moment the fact that McGuire admits having engaged in the misconduct upon which the Record of Counseling was based, the Record of Counseling did not result in any disciplinary action or loss of benefits and therefore does not constitute an adverse employment action. As the Eleventh Circuit has stated, "[c]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline." *Davis*, 245 F.3d at 1240 (11th Cir. 2001); *see also*, *Azoy v. Miami-Dade County*, No. 02-20757-CIV-MARTINEZ, 2003 WL 22135963, *5 (S.D. Fla. 2003) (record of counseling was a warning and not a disciplinary action).

In sum, none of the various misdeeds allegedly inflicted upon McGuire constitutes an adverse employment action. Her unsubstantiated claim that she was required to perform excessive job duties does not rise to the level of a serious and material change in the terms and conditions of her employment. Nor do her complaints regarding an alleged delay in processing her request for reclassification, an alleged delay in issuing a performance evaluation, denial of training, or issuance of an unwarranted Record of Counseling constitute an actionable adverse action. Because the undisputed facts demonstrate that McGuire did not suffer an adverse employment action, McGuire has not established a *prima facie* case of retaliation. Accordingly, the County is entitled to summary judgment on Count I of the Complaint.

**B. McGuire has failed to establish a *prima facie* case of retaliation because she has not shown that there is a causal link between her protected activity and the alleged adverse actions.**

Even assuming that any of the incidents cited by McGuire constitutes an adverse action, her retaliation claim still fails because she has not established the third element of a *prima facie* case, i.e., that there is a causal link between her protected activity and the adverse action. As McGuire conceded during her deposition, three of the alleged adverse actions actually occurred before McGuire filed her June 20, 2003 EEOC charge: excessive workload (May 2003); denial of training (March 2003); and issuance of a Record of Counseling (May 28, 2003). *McGuire depo.* at 140-42, 167. Accordingly, there can be no causal link between these actions and McGuire's June 20, 2003 EEOC charge because retaliation cannot occur before a plaintiff has engaged in protected expression. *Dillard v. Chicago Transit Authority*, 105 F.3d App. 107, 111 (7th Cir. 2004); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003).

Nor has McGuire shown a causal link between the filing of her EEOC charge and the other adverse actions alleged in the Complaint. The alleged delay in processing McGuire's request for reclassification occurred between October 27, 2003 (the date she submitted the request), and June 4, 2004 (the date she withdrew the request). The alleged delay in presenting McGuire with her performance evaluation occurred between October 26, 2003 (the end of the evaluation period) and March 25, 2004 (the date she received the evaluation). Thus, both of these alleged adverse actions occurred at least four months after McGuire filed her June 20, 2003 EEOC charge. While close temporal proximity between a plaintiff's protected activity and an adverse employment action may sometimes be sufficient to establish a causal link, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), the period of time involved in this case is too long to support an inference that the allegedly adverse actions were causally related to

McGuire's EEOC charge. *See, e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding 3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (finding 4-month period insufficient).

Because McGuire has not shown a casual relationship between her June 20, 2003 EEOC charge and any of the alleged adverse actions taken against her, she has not established a *prima facie* case of retaliation. Accordingly, the County is entitled to summary judgment on Count I of the Complaint.

### III. The undisputed facts show that the County is entitled to summary judgment on Count II of the Complaint (discrimination in violation of the Americans with Disabilities Act) because McGuire has failed to establish a *prima facie* case.

Under the Americans with Disabilities Act ("ADA"), an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims. *Earl v. Mervyn's, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); *Doe v. Dekalb County School District*, 145 F.3d 1441, 1445 (11th Cir. 1998). In order to establish a *prima facie* case, a plaintiff must prove the following three elements by a preponderance of the evidence: (1) that she has a disability; (2) that she is a qualified individual; and (3) that she has suffered an adverse employment action because of her disability. *Id.*

#### A. McGuire has failed to establish a *prima facie* case because she has not shown that she has a disability within the meaning of the ADA.

In order to state a claim under the ADA, a plaintiff must first prove that she has a disability as defined by the ADA. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1327 (11th

Cir. 1998). The ADA defines "disability" as "a physical or mental impairment that substantially limits one of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). ADA regulations define "major life activities" as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In determining whether an impairment is substantially limiting, courts consider the nature and severity of the impairment, its duration or expected duration, and the permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

As the U.S. Supreme Court has stated, "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *see also*, *Standard*, 161 F.3d at 1327 ("merely proving the existence of a physical impairment, without addressing any limitation on major life activities, is not sufficient to prove disability") (citing *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (11th Cir.1996)).

Here, McGuire has not established that her Meniere's disease substantially limits any major life activity. In fact, she has not even specified a major life activity in which she contends she is substantially limited. McGuire has presented no medical evidence or expert testimony, and the only evidence she offers concerning the effect of her Meniere's on her daily functioning is her own testimony that "I lose balance. I have to lay down. I am dizzy. I vomit a lot. Those are the attacks, but in general, when I handle this condition, most of the time I'm dizzy and, at some point, noises start to bother me." *McGuire depo.* at 186. Asked whether this condition ever

prevented her from completing her tasks at work, McGuire replied that on one occasion in 1998 she had to be taken home. *McGuire depo.* at 108.

Even assuming that McGuire's Meniere's disease has some effect on a major life activity, it does not constitute an ADA disability because the severity and duration of her symptoms are not substantially limiting. "Impairments that result in only mild limitations are not disabilities." *Kelly v. Drexel University*, 94 F.3d 102, 107 (3rd Cir. 1996) (quoting *EEOC Compliance Manual* § 902, at 902-19). The occasional dizziness and discomfort described by McGuire falls far short of meeting the definition of a disability under the ADA. In fact, other courts presented with ADA claims by plaintiffs with Meniere's disease have rejected the argument that Meniere's-induced symptoms rise to the level of an ADA disability. *See, e.g., McGeshick v. Principi*, 357 F.3d 1146 (10th Cir. 2004) (plaintiff with Meniere's disease, associated hearing loss, ringing in the ears, and vertigo failed to establish that he was disabled or perceived as disabled by prospective employer); *Perkins v. St. Louis County Water Co.*, 160 F.3d 446 (8th Cir. 1998) (plaintiff failed to produce evidence from which reasonable fact finder could conclude that Meniere's disease disabled him within meaning of ADA). Likewise, courts have held that impairments such as vertigo or even occasional seizures do not constitute substantial limitations within the meaning of the ADA. *See, e.g., D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1227 (11th Cir. 2005) (plaintiff's vertigo condition which caused her to occasionally experience dizziness at work did not substantially impair her ability to work); *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 276 (4th Cir. 2004) ("intermittent manifestations of an illness are insufficient to establish a substantial limitation on a major life activity"); *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001) (plaintiff who suffered epileptic seizures twice weekly on average was not substantially limited in major life activities of sleeping, thinking or caring for oneself); *Batac v.*

*Pavarini Const. Co., Inc.*, 2005 WL 2838600, *7 (S.D.N.Y. 2005) (thirty minute to one hour episode of dizziness once a day does not substantially limit any major life activity).

Insofar as McGuire has not shown that she has a disability as defined by the ADA, she has not established a *prima facie* case. Accordingly, the County is entitled to summary judgment on Count II of the Complaint.

### B. McGuire has failed to establish a *prima facie* case because she has not shown that she suffered an adverse employment action.

Even if McGuire could prove that she is disabled, her discrimination claim still fails because she cannot satisfy the third element of her *prima facie* case: that she suffered an adverse employment action. Rather than restate here all of the reasons why McGuire has failed to show that she suffered an adverse employment action, the County adopts and incorporates its argument set forth in Section II.A, *supra*.

## CONCLUSION

McGuire has not established a *prima facie* case of retaliation because none of the circumstances of which she complains constitutes an adverse employment action. Moreover, McGuire has not shown a causal link between any of the alleged adverse actions and her engagement in protected activity. McGuire's claim under the ADA fails because she has not shown that she has a disability as defined by the ADA. Even assuming her Meniere's disease qualifies as a disability, McGuire has not established a *prima facie* case because she has not suffered an adverse employment action. Accordingly, the County is entitled to summary judgment on all counts of the Complaint.

WHEREFORE, the County respectfully requests that this Honorable Court grant this Motion and enter summary judgment for the County on all counts of the Complaint.

Respectfully submitted,

MURRAY A. GREENBERG
Miami-Dade County Attorney
111 NW First Street, Suite 2810
Miami, FL 33128

Phone: 305-375-5151
Fax:    305-375-5634
Email: smario@miamidade.gov

By: _____
Scott B. Mario
Assistant County Attorney
Florida Bar No. 0177441

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 1st day of December, 2005, to: Leslie Holland, Esq., 801 NE 167th Street, Second Floor, North Miami Beach, FL 33162.

By: _____
Scott B. Mario